21-2949-cv
*Capitol Records v. Vimeo*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2023

(Argued: October 12, 2023          Rehearing Decided: September 9, 2025 )

Docket Nos. 21-2949-cv/21-2974-cv

_____

CAPITOL RECORDS, LLC, a Delaware Limited Liability company, CAROLINE RECORDS, INC., a New York Corporation, VIRGIN RECORDS AMERICA, INC., a California Corporation, EMI BLACKWOOD MUSIC INC., a Connecticut Corporation, EMI APRIL MUSIC INC., a Connecticut Corporation, EMI VIRGIN MUSIC, INC., a New York Corporation, COLGEMS-EMI MUSIC, INC., a Delaware Corporation, EMI VIRGIN SONGS, INC., a New York Corporation, EMI GOLD HORIZON MUSIC CORP., a New York Corporation, EMI UNART CATALOG INC., a New York Corporation, STONE DIAMOND MUSIC CORPORATION, a Michigan Corporation, EMI U CATALOG INC., a New York Corporation, JOBETE MUSIC CO., INC., a Michigan Corporation,

*Plaintiff-Appellants*,

v.

VIMEO, INC., a Delaware Limited Liability company, AKA VIMEO.COM, CONNECTED VENTURES, LLC, a Delaware Limited Liability company,

*Defendant-Appellees*,

DOES, 1-20 INCLUSIVE,

*Defendants*.

_____

Before:   LEVAL, PARKER, and MERRIAM, *Circuit Judges*.

Plaintiffs, who are rightsholders of musical recordings, all affiliates of EMI, petition for reconsideration of our decision of January 13, 2025. *See Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409 (2d Cir. 2025). In that opinion, we ruled, in part, that Plaintiffs waived the argument under *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), that Defendants Vimeo, Inc. and Connected Ventures, LLC's (collectively, "Vimeo") encouragement of users to make infringing lip-dub videos may constitute a form of "right and ability to control" infringement, thus risking forfeiture of the safe harbor provided by the Digital Millennium Copyright Act, 17 U.S.C. § 512(c). The petition for rehearing is GRANTED in part and DENIED in part.

>CATHERINE E. STETSON (Nathaniel A.G. Zelinsky, Hogan Lovells US LLP, Washington, D.C.; Russell J. Frackman, Mitchell Silberberg & Knupp LLP, Los Angeles, CA, *on the brief*), Hogan Lovells US LLP, Washington, D.C., *for Plaintiff-Appellants*.
>
>KATHLEEN M. SULLIVAN (Todd Anten, Owen F. Roberts, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY; Michael A. Cheah, Vimeo, Inc., New York, NY; Rachel Kassabian, Quinn Emanuel Urquhart & Sullivan, LLP, Redwood Shores, CA, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA, *for Defendant-Appellees*.
>
>Hyland Hunt, Ruthanne M. Deutsch, Alexandra Mansbach, Deutsch Hunt

2

PLLC, Washington, D.C., *for amici curiae*, National Music Publishers' Association, Recording Industry Association of America, and Copyright Alliance, *in support of Plaintiff-Appellants*.

Matthew C. Schruers, Alexandra Sternburg, Computer & Communications Industry Association, Washington, D.C., *for amicus curiae*, Computer & Communications Industry Association, *in support of Defendant-Appellees*.

Mitchell L. Stoltz, Corynne McSherry, Electronic Frontier Foundation, San Francisco, CA, *for amicus curiae*, Electronic Frontier Foundation, *in support of Defendant-Appellees*.

Rebecca Tushnet, Harvard Law School, Cambridge, MA, *for amici curiae*, Intellectual Property Scholars *in Support of Defendant-Appellees*.

LEVAL, *Circuit Judge*:

Plaintiffs, who are rightsholders of musical recordings, all affiliates of EMI, petition for reconsideration of our decision of January 13, 2025. *See Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409 (2d Cir. 2025) ("January 13 Opinion"). Plaintiffs brought this action against Defendants Vimeo, Inc. and Connected Ventures, LLC (collectively, "Vimeo") claiming that Vimeo is liable to Plaintiffs

3

for copyright infringement by reason of hosting on its website videos, posted by Vimeo users, playing copyright-protected music owned by Plaintiffs. We found in favor of Vimeo, on the basis of the safe harbor conferred on internet service providers by § 512(c) of the Digital Millenium Copyright Act ("DMCA"). *See* 17 U.S.C. § 512(c)(1). We ruled, in part, that Plaintiffs waived the argument under *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ("*Grokster*"), that Vimeo's encouragement of users to make infringing lip-dub videos may satisfy the statutory standard of "right and ability to control" infringement, which can result in forfeiture of the safe harbor. 17 U.S.C. § 512(c)(1)(B). In support of their petition for reconsideration, Plaintiffs contend that the *Grokster*-based argument, which this court found to be waived, was in fact pressed throughout Plaintiffs' opening brief. Plaintiffs also ask that we remove from the January 13 Opinion a footnote in which we discussed the question whether the *Grokster*-based argument, even if waived in our court, was adequately preserved for review by the Supreme Court.

The petition is granted in part and denied in part, for the reasons that follow. We reject Plaintiffs' contention that they did not waive the *Grokster*-based argument. Their petition is denied in that regard. However, we grant the

4

petition in so far as it seeks to remove the footnote discussing whether the *Grokster*-based argument is preserved for review by the Supreme Court.

## BACKGROUND

We assume familiarity with the facts set forth in the January 13 Opinion, *see Capitol Records*, 125 F.4th at 413-17, and begin with an overview of precedent and procedural history relevant to the petition.

### I. The DMCA

"Section 512(c) of the [DMCA] establishes a safe harbor, which protects qualifying service providers from liability for infringement when users of the service upload infringing material onto the providers' websites." *Id.* at 413 (citing 17 U.S.C. § 512(c)(1)). "However, the safe harbor is not available to a service provider if the service provider (A) has actual or red flag knowledge that the material on its website is infringing and fails to remove the infringing matter expeditiously, or (B) has the right and ability to control infringing material on its website and receives a financial benefit directly attributable to that activity." *Id.* (citing 17 U.S.C. § 512(c)(1)).

In *Viacom International, Inc. v. YouTube, Inc.*, this court held that "the 'right and ability to control' infringing activity under § 512(c)(1)(B) 'requires something more than the ability to remove or block access to materials posted

on a service provider's website.'" 676 F.3d 19, 38 (2d Cir. 2012) (quoting *Capitol Recs., Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 645 (S.D.N.Y. 2011)). Recognizing the difficulty in defining that "something more," *id.*, the *Viacom* opinion offered two possible constructions based on two cases in which a service provider "exert[ed] substantial influence on the activities of users, without necessarily—or even frequently—acquiring knowledge of specific infringing activity." *Id.* First, citing *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002) ("*Cybernet*"), we suggested that the requisite "something more" might exist if a service provider imposed editorial standards over content, and instituted a strict monitoring program to enforce such standards, including by refusing access to non-compliant users. *Viacom*, 676 F.3d at 38. Second, citing *Grokster*, we noted that "inducement of copyright infringement[,] . . . which premises liability on purposeful, culpable expression and conduct, might also rise to the level of control under § 512(c)(1)(B)." *Id.* (internal citations and quotation marks omitted).

## II. District Court Proceedings and Interlocutory Appeal

In addressing Plaintiffs' contention that they did not waive the *Grokster*-based argument, we focus first on the arguments advanced by Plaintiffs in the district court. In their motion for partial summary judgment demanding

6

rejection of Vimeo's defense based on the DMCA safe harbor and in opposition to Vimeo's motion for summary judgment, Plaintiffs argued, following the framework laid out in *Viacom*, that "[t]he right and ability to control infringement" under the DMCA "can be demonstrated in two different ways:" (1) the *Cybernet* path—by showing "a monitoring program that, for example, includes detailed instruction on issues of layout, appearance, and content," or (2) the *Grokster* path—by showing "inducement to infringe which premises liability on purposeful, culpable expression and conduct." J. App'x at 164 (internal quotation marks omitted). In their district court briefing, Plaintiffs offered thirteen pages of argument analogizing Vimeo's efforts to curate its website, enforce content restrictions, and monitor user content to the monitoring program in *Cybernet*, *see id.* at 165–77, and ten separate pages framing Vimeo's efforts to, among other things, create, upload, and promote lip-dub videos, as inducement to infringe under *Grokster*, *see id.* at 177–86. Vimeo dedicated nearly five pages of its opposition brief to rebutting Plaintiffs' *Cybernet*-based arguments, *see* Defendants' Opposition To Plaintiffs' Motion for Partial Summary Judgment And Reply In Further Support Of Defendants' Motion For Summary Judgment Pursuant To The DMCA Safe Harbor, ECF No.

7

76, at 21-25, and nearly six pages to rebutting Plaintiffs' *Grokster*-based arguments, *see id.* at 25-30.

In ruling on the summary judgment motions, the district court adopted Plaintiffs' proposed structure, "us[ing] the cases cited in . . . *Viacom*—*Cybernet* and *Grokster*—as analytical guideposts" because "each supplies a distinct example of conduct" to establish a right and ability to control. Spec. App'x at 39. In particular, in a sub-section titled "*Cybernet*—Substantial Influence Through a Monitoring Program," *id.*, the district court, following approximately six pages of analysis, found no triable issue as to Vimeo's exertion of substantial influence on user activity through its monitoring program. *See id.* at 45. In the following sub-section titled "*Grokster*—Substantial Influence through Inducement of Infringement," *id.*, the district court, as detailed in approximately eight pages of analysis, found "no basis to conclude that Vimeo exerted substantial influence on its users' activities through inducement," *id.* at 52. In this sub-section, the district court specifically rejected Plaintiffs' *Grokster*-based argument regarding lip-dub videos. The court acknowledged the presence in the record of "stray instances of wrongful conduct by Vimeo employees on the [w]ebsite and/or a generalized effort to

8

promote videos that incorporate music," but concluded that this evidence did "not rise to the level . . . adduced in *Grokster*," where "the record was replete with evidence that defendants clearly voiced the objective that recipients use [their product] to download copyrighted works." *Id.* at 48 (internal quotation marks omitted).

In a separate order, the district court certified three questions for interlocutory appeal—none of which concerned right and ability to control under § 512(c)(1)(B):

> (i) whether the safe harbor of § 512(c) applies to pre-1972 sound recordings; (ii) whether evidence of some viewing by Vimeo employees of videos that played all or virtually all of "recognizable" copyrighted songs was sufficient to satisfy the standard of red flag knowledge, which would make Vimeo ineligible for the DMCA safe harbor; and (iii) whether Plaintiffs have shown that Vimeo had a general policy of willful blindness to infringement of sound recordings, which would justify imputing to Vimeo knowledge of the specific infringements.

*Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 82 (2d Cir. 2016) ("*Vimeo I*").

On the third certified question—willful blindness—Plaintiffs argued that Vimeo "actively encouraged users to post videos containing infringing material," and that a service provider "cannot adopt a general policy of urging or encouraging users to post infringing material and then escape liability by

9

hiding behind a disingenuous claim of ignorance of the users' infringements." *Id.* at 99. In support, Plaintiffs specified a handful of instances where employees failed to comply with company policy by telling users not to worry about infringement, including one instance where a Vimeo employee responded to a user's question that he "'see[s] all the time at vime[o] videos, (for example Lip-dub) music being used that is copyrig[ht]ed, is there any problem with this?' by telling the user '[w]e allow it, however if the copyright holder sent us a legal takedown notice, we could have to comply.'" *Id.* at 85.

In responding to the certified questions, we rejected Plaintiffs' argument, finding the evidence of the "sporadic instances . . . in which Vimeo employees inappropriately encouraged users to post videos that infringed music," none of which related to the videos at issue in the lawsuit, did not support a finding of "the sort of generalized encouragement of infringement supposed by [Plaintiffs'] legal theory" of willful blindness, and was thus "insufficient to justify a finding of red flag knowledge." *Id.* at 99. We did not mention *Grokster* or use the word "induce" anywhere in our opinion resolving the interlocutory appeal.

## III. Direct Appeal

On direct appeal, Plaintiffs did not address the *Grokster* inducement theory, other than in a footnote to the portion of their opening brief discussing right and ability to control under *Cybernet*. The footnote stated:

> Providers can also exercise "substantial influence" when they induce infringement, as occurred in *Grokster*. *See Viacom*, 676 F.3d at 38; *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013). *Grokster* represents a different type of control that "premises liability on purposeful, culpable expression and conduct." *Viacom*, 676 F.3d at 38 (quoting *Grokster*, 545 U.S. at 937). The rightsholders acknowledge that *Vimeo I* forecloses (at this stage) the argument that Vimeo's "urging" and "encouraging users to post infringing material" constituted inducement under *Grokster*. *Vimeo I*, 826 F.3d at 99. The rightsholders preserve this argument for further review.

Appellants' Br. at 28 n.5 ("Footnote 5").

In its opposition brief, Vimeo forcefully noted Plaintiffs' abandonment of the *Grokster* inducement argument:

> In granting summary judgment to Vimeo on this issue, the district court examined two decisions as "analytical guideposts": *Cybernet*, 213 F. Supp. 2d 1146, and [*Grokster*], 545 U.S. 913 (2005). SPA 39. On appeal, Plaintiffs limit their challenge to the district court's *Cybernet* analysis.

11

Appellees' Br. at 24 (citing Appellants' Br. at 27-28 & n.5). Plaintiffs did not deny or contest Vimeo's assertion that Plaintiffs were "limit[ing] their challenge to the district court's *Cybernet* analysis." *Id.*

In our January 13 Opinion, we affirmed the district court's grant of summary judgment in favor of Vimeo. In so doing, we noted a possible question whether Vimeo's promotion of lip-dub videos encouraged infringement in a way that might be deemed an exercise of the right and ability to control under *Grokster* and thus a possible forfeiture of the safe harbor. While we recognized some "force in the argument that encouraging users to make infringing lip-dubs should trigger forfeiture of a safe harbor designed to protect service providers from liability for infringements for which they were in no way responsible," we concluded on the basis of Footnote 5 of Plaintiffs' opening brief that Plaintiffs had decided not to assert the argument. *Capitol Records*, 125 F.4th at 427. We expressed surprise at Plaintiffs' conclusion that our ruling in *Vimeo I* foreclosed the argument. We wrote,

> We do not read our opinion in *Vimeo I* as foreclosing this potentially forceful argument. Our comments in *Vimeo I* to the effect that Plaintiffs' arguments were not supported by the evidence concerned a different issue: willful blindness to infringement, which we ruled could not be demonstrated by "a handful of sporadic instances . . . in which Vimeo employees

12

> inappropriately encouraged users to post videos that infringed music." *Vimeo I*, 826 F.3d at 99.
>
> In *Vimeo I*, we rejected Plaintiffs' contention of Vimeo's willful blindness in substantial part because of the tiny scope of isolated instances of a different sort of encouragement to infringe: where employees deviated from company policy by telling users not to worry about infringement. Our opinion neither said nor implied that encouragements to infringe could not impact Vimeo's entitlement to the safe harbor *under Section 512(c)(1)(B)*. The discussion furthermore did not concern Vimeo's policy to encourage lip-dubs. We can see no basis for Plaintiffs' reading our *Vimeo I* opinion as "foreclose[ing] . . . the argument that Vimeo's 'urging' and 'encouraging users to post infringing material' constituted inducement."

*Id.* at 427-28.

In a footnote, we also questioned whether Plaintiffs could properly preserve the *Grokster* argument for review by the Supreme Court without having raised it before us, especially in the circumstance in which our court had not expressed views on the question. *See id.* at 427 n. 15 ("Footnote 15").

Plaintiffs filed a timely petition for rehearing. Vimeo filed a response.

## DISCUSSION

In their petition for reconsideration, Plaintiffs make two arguments. First, they contend that, contrary to our perception of waiver, they were in fact arguing the *Grokster*-based inducement theory of right and ability to control in

13

their opening brief. Second, they argue that we should eliminate from our opinion our expression of doubt as to whether they had properly preserved that argument for review by the Supreme Court. We discuss each of these arguments in turn.

### I. Waiver of *Grokster* Inducement Theory

Plaintiffs insist that they did not waive the *Grokster* inducement theory of right and ability to control; far from waiving, they in fact "pressed [it] . . . throughout the text of their brief." Petition at 1.

It is true that *in the Fact Section of Plaintiffs' brief*, they recite facts that would support the *Grokster*-based argument in question. However, nowhere in the Argument section of the brief do they make the *Grokster*-based argument, predicated on the facts recited, that inducement to infringe through the lip-dub program could satisfy the requirement of right and ability to control under the *Grokster* precedent. To the contrary, the brief in Footnote 5 expressly "acknowledge[d] that *Vimeo I* forecloses (at this stage) the argument that Vimeo's 'urging' and 'encouraging users to post infringing material' constituted inducement under *Grokster*." Appellants' Br. at 28 n.5. "It is a settled appellate rule that issues . . . unaccompanied by some effort at developed argumentation, are deemed forfeited." *Palin v. N.Y. Times Co.*, 113 F.4th 245, 279

14

(2d Cir. 2024) (internal quotation marks omitted). "This is true even if an appellant argued the same issues more fully before the district court that she left undeveloped on appeal." *Id.*

Plaintiffs contend that they went on to argue those facts in the portion of the Argument section addressing right and ability to control under § 512(c)(1)(B), specifically, under the heading "I. A Reasonable Factfinder Could Conclude That Vimeo Possessed The Right And Ability To Control Infringing Activity And Received A Benefit." Appellants' Br. at 27. But that portion of Plaintiffs' brief made different arguments about right and ability to control—primarily the argument based on *Cybernet*, that is that the exertion of substantial influence by imposition of strict editorial controls over user postings and submissions can constitute right and ability to control.

Since *Viacom* and throughout the evolution of arguments in this case, it has been clear that the approach to demonstrating "substantial influence" outlined in *Cybernet*, and the encouragement to infringe approach, based on *Grokster*, are two distinct ways to satisfy right and ability to control. Plaintiffs' initial brief in this appeal vigorously argued the *Cybernet*-based theory that right and ability to control was achieved by imposition of editorial controls

15

over user content. As for satisfying right and ability to control by encouragement of infringement, as approved by *Grokster*, Plaintiffs' brief did not argue it because they "acknowledge[d]" that theory as "foreclose[d]" by our earlier ruling in *Vimeo I*. *Id.* at 28 n.5.

That Plaintiffs' arguments relied only on the *Cybernet* theory, and not on the *Grokster* theory is also apparent from the topic-headings in the Argument section of the brief. These include:

> A.  A Provider Exerts "Substantial Influence" When It Makes Editorial Judgments About Users' Uploads.
>     1.  Step 1: Is There A Relationship Between The Provider's Control And The Infringing Activity?
>     2.  Step 2: Does The Provider Exercise Editorial Judgment Over Its Users' Activity?
>     3.  ***Cybernet* And Subsequent Precedent Confirm These Steps.**
>
> B.  A Jury Could Find That Vimeo Exerted Significant Editorial Judgment Over Users' Content.
>     1.  **Vimeo's Control Exceeded The Provider's Control In *Cybernet*.**
>     2.  The District Court Misapplied The Substantial Influence Standard And Improperly Drew Every Inference In Vimeo's Favor.
>
> C.  Vimeo Directly Benefited From Infringement.
>     1.  "Direct Financial Benefit" Has Its Common-Law Meaning.

16

> 2. Vimeo Received A Financial Benefit Causally Related To Users' Infringement.

Appellants' Br. at 28-52 (emphases added). Each of these headings, and the argumentation text that followed, made clear that the argument they made was the *Cybernet*-based argument of achieving right and ability to control by imposition of editorial controls. In no context did they rely on the *Grokster*-based theory of achieving right and ability to control by encouraging users to infringe. Other than in Footnote 5 (and a string-cite on an unrelated point, *see id.* at 29), the brief makes *no mention* of *Grokster*, or of the word "induce," in the Argument section. As for the *Grokster*-based encouragement argument, we merely took Plaintiffs at their word—that they had concluded that the argument was foreclosed by our earlier ruling and therefore did not argue it.

We do not dispute that Plaintiffs relied on the inducement or encouragement of users to post infringing content, especially in encouraging the posting of lip-dubs, but their arguments were advanced solely as support for Plaintiffs' *Cybernet*-based argument on exertion of editorial control. The introductory sentence of the relevant section states, "Vimeo encouraged users to make specific types of content. *Cf. Cybernet*, 213 F. Supp. 2d at 1181-82." Appellants' Br. at 40. The cited parts of the opening brief do not, as Plaintiffs

17

now contend, argue the separate *Grokster*-based theory. And if there were any doubt about which theory was being argued and which was not, Plaintiffs eliminated any possible doubt by explaining in Footnote 5 why they did not argue the *Grokster*-based inducement theory. In the footnote, Plaintiffs acknowledge that the *Grokster* theory represents "a different type of control" than control achieved under the *Cybernet* theory, which they were vigorously arguing. *Id.* at 28 n.5.

We conclude that, in Footnote 5, Plaintiffs expressly waived the *Grokster*-based argument that Vimeo had substantial influence over, or the right and ability to control, infringement. As noted above, Vimeo expressly flagged Plaintiffs' waiver of the *Grokster* inducement argument in its opposition brief. *See* Appellee Br. at 24 ("On appeal, Plaintiffs limit their challenge to the district court's *Cybernet* analysis.") (citing Appellants' Br. at 27-28 & n.5). Plaintiffs did not challenge this framing of their opening brief on reply.

Plaintiffs try to escape this conundrum by arguing that their waiver was not of the *Grokster*-based theory of forfeiture of the safe harbor, but rather of a *claim* under *Grokster* for induced infringement. We are not persuaded. As Vimeo points out, the distinction between a *Grokster*-based claim and *Grokster*-

18

based forfeiture of the DMCA safe harbor appeared nowhere in Plaintiffs' opening brief. And, perhaps more importantly, it ignores that the issue on appeal was Vimeo's eligibility for the safe harbor—not liability for an infringement claim.

We reject Plaintiffs' argument that we erred in finding that they waived (or forfeited) the *Grokster*-based argument that Vimeo's inducement of users to lip-dub qualified as right and ability to control.

## II. Preservation of *Grokster* Inducement Theory for Supreme Court Review

Plaintiffs ask us to remove language in Footnote 15 of the January 13 Opinion suggesting that their *Grokster* inducement theory of right and ability to control is barred from review by the Supreme Court. We agree to Plaintiffs' proposed modification and amend the January 13 Opinion accordingly.

## CONCLUSION

For the foregoing reasons, the petition is hereby GRANTED in part and DENIED in part. We hereby AMEND the January 13 Opinion to remove Footnote 15.